**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | BKY 15-42150-MER |
| Karen White, | Chapter 7 |
|       Debtor. | |
| Randall L. Seaver, Trustee, | Adv. No. 15-04211 |
|       Plaintiff, | |
|       v. | |
| Rita Lindback, | |
|       Defendant. | |

_____

**MEMORANDUM DECISION AND ORDER FOR JUDGMENT**
_____

At Minneapolis, Minnesota, September 9, 2016.

The matter pending before the Court is the Plaintiff's motion for summary judgment. The Court heard oral argument on August 11, 2016. Matthew D. Swanson, Esq., appeared on behalf of the Plaintiff (the "Trustee" or the "Plaintiff"); David C. Olson, Esq., appeared on behalf of the Defendant ("Lindback" or the "Defendant"). The Court requested and received supplemental documents from Defendant's counsel[1] and the matter is now ready for resolution.

This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction under 28 U.S.C. §§ 157(a) and 1334. The Court makes this memorandum decision based on all

---

[1] See ECF No. 18 - affidavit of Karen White ("White" or "the Debtor") and affidavit of Lindback. These affidavits were filed to remedy the deficiencies of the "affidavits" attached to the Defendant's response to the motion for summary judgment (ECF No. 15). The earlier filings did not comport with the requirements of Loc. R. Bankr. P. (D. Minn.) 9011-4(e). See also ECF No. 19 - Defendant's "Supplemental Memorandum" regarding the Trustee's argument that the Defendant waived her right to assert an "ordinary course of business" defense.

the files, records, and proceedings herein, and pursuant to Fed. R. Bank. P. 7056.  For the reasons set forth below, the Trustee's motion will be granted.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this motion by Federal Rule of Bankruptcy Procedure 7056.  Rule 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Thus, when a party files a motion for summary judgment, it has put the issue that there are no disputed material facts before the trial court.  The moving party must advise the court of all evidence which it believes demonstrates the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988).  Once the movant has made its showing, the burden shifts to the non-moving party, who must establish by its own affidavits, or other admissible evidence, that there are specific and genuine issues of material fact warranting a trial. Celotex, 477 U.S. at 324.  The non-moving party must present specific, significant, and probative evidence supporting its case.  Johnson v. Enron Corp., 906 F.2d 1234, 1237 (8th Cir. 1990).

"Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [non-moving party] and giving [the non-moving party] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the moving party] is entitled to judgment as a matter of law." Price v. Northern States Power Co., 664 F.3d 1186, 1191 (8th Cir. 2011).  Stated another way, summary judgment must be entered if, after adequate discovery

time, the party against whom relief is sought fails to make a sufficient showing to establish the existence of an element essential to its case upon which it will bear the burden of proof in trial. Celotex, 477 U.S. at 327.

     Initially, it is the burden of the movant to inform the court of the basis for the motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 324.  Once the movant has made its showing, the burden of production shifts to the nonmoving party which must "go beyond the pleadings and by [its] . . . own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" and establish that there are specific and genuine issues of material fact warranting a trial. Celotex, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(c)).  The non-moving party cannot cast some metaphysical doubt on the moving party's assertion. Matsushita Elec. Indust. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party must present probative evidence supporting its case sufficient "to require a . . . judge to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)).

     In sum, the movant must show there is an absence of evidence to substantiate the non-moving party's case. Celotex, 477 U.S. at 325.  Lastly, the "salutary purpose" served by summary judgment is to permit the speedy and expeditious disposal of cases where the pleadings do not–as a matter of fact–present any substantial question for determination. Avrick v. Rockmont Envelope Co., 155 F.2d 568, 571 (10th Cir. 1946).  This action is ripe for summary judgment.

# BACKGROUND

The Trustee initiated an avoidance action under Minn. Stat. § 513.45(b), made applicable to bankruptcy proceedings by virtue of 11 U.S.C. § 544. He seeks to avoid, and recover for the benefit of the estate, the sum of $41,356.24, which the Debtor paid to Lindback (her mother), May 27, 2014, as partial repayment of a series of unsecured loans totaling $71,500.00 Lindback had made to the Debtor between February 2012 and December 2013.

The loans were made to the Debtor to enable her to complete an expansion to the business she owned, Diamond in the Rough, LLC, a horse boarding and riding facility located near Dayton, Minnesota. The improvements included a large indoor riding ring, tack barn, and a social room for her clients. The Debtor made regular monthly payments to her mother from March 2012 to February 2013. No further payments were made by the Debtor until May 2014, when she liquidated certain stock interests she owned, and paid Lindback the $41,356.24[2] as partial repayment of the loans.[3]

## THE MINNESOTA STATUTE

The Trustee's one-count complaint invokes Minn. Stat. § 513.45(b), often referred to as "the Minnesota preference statute," which states:

> (b) A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

---

[2] According to the Debtor, these funds consisted of four checks made payable to her; she in turn endorsed the checks over to the Defendant on May 27, 2014. See ECF No. 1, question # 9., Statement of Financial Affairs.

[3] The amount still owed Lindback at the time of the petition was $40,400.00. See ECF No. 1, Schedule F.

Minn. Stat. § 513.45(b).  Under this statute, the Trustee has the burden of establishing the following elements:

- the Debtor made a transfer to Lindback;
- the transfer was made to an insider;
- the transfer was made on account of an antecedent debt;
- the Debtor was insolvent at the time of the transfer; and
- the insider (Lindback) had reasonable cause to believe that the Debtor was insolvent.[4]

The Defendant concedes, as well she must, that the trustee has met his burden in establishing all of these elements save the last: that the Defendant had reasonable cause to believe that the Debtor was insolvent.  The Defendant also asserts that the transfer at issue was made in the "ordinary course of business" of the Debtor and herself.  Each defense will be addressed in turn.

**A.     The "Ordinary Course of Business" Defense**

In her response to the Plaintiff's motion for summary judgment, the Defendant asserted that "[t]he payments made by the debtor to the Defendant were made in the course of business or financial affairs of the debtor and the Defendant.  Minn. Stat. § 513.48(f)(2)."  See ECF No. 15, p. 2.  This defense was not raised in the Defendant's answer, nor was it raised in any other pleading.  This "ordinary course of business" defense is recognized under Minnesota state law as a valid defense to the Trustee's cause of action.   He claims, however, that the Defendant has waived her right to assert such affirmative defense.

Fed. R. Civ. P. 8(c), made applicable to this proceeding under Fed. R. Bankr. P. 7008,

---

[4] Under 11 U.S.C. § 544(b)(1), the trustee must also establish the existence of an unsecured creditor both at the time of the transfer, and at the time of the filing of the petition.  See In re Goodspeed, 535 B.R. 302, 306 (Bankr. D. Minn. 2015).  The Defendant does not dispute this point.

5

provides that, "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . ." Similarly, its state law counterpart, Minn. R. Civ. P. 8.03, states, in pertinent part: "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy . . . and any other matter constituting an avoidance or affirmative defense."

In her reply to the Trustee's waiver argument, the Defendant points to both the federal rule and its state counterpart, neither one of which, she urges, specifically lists the "ordinary course of business" as an affirmative defense that is required to be pleaded. "Defendant's position, that the payments received by the debtor were made in the ordinary course of the business or financial affairs of the debtor negates elements of Plaintiff's prima facie case." ECF No. 19, p. 2.

This Court disagrees with that argument. First, both the federal rule and the state rule are phrased as being **inclusive**, and not **exhaustive**. In other words, the absence of the ordinary course of business defense in the list of various kinds of defenses that may be asserted to a cause of action does not mean that it should not be considered as an affirmative defense. Second, the defense does not go to any element of the Trustee's avoidance action. Simply put, it is an affirmative defense that must be specifically pleaded at an early state of the proceeding.

Failure of a party to assert, in a timely fashion, an affirmative defense, can result in a waiver of it. "Alleged debtor's status as a farmer does not go to the jurisdiction of the bankruptcy court over an involuntary petition but, instead, is an affirmative defense that is waived if not timely raised." In re Marlar, 413 F.3d 813 (8th Cir. 2005).

> If the alleged debtor fails to assert his status as a farmer as a defense to an involuntary petition prior to the bankruptcy court entering an order for relief, then he waives that defense. Id.; 11 U.S.C. § 303(h). Accordingly, if an alleged debtor believes he is a farmer but nonetheless consents to bankruptcy court entering an order of relief on the involuntary petition, he waives his farmer defense to the involuntary petition. In re McCloy, 296 F.3d 370, 376 (5th Cir. 2002).

In re Young, 336 B.R. 775, 778–79 (B.A.P. 8th Cir.), aff'd, 207 F. App'x 735 (8th Cir. 2006). See also In re Inv. Sales Diversified, Inc., 49 B.R. 837, 842 (Bankr. D. Minn. 1985) ("In the present matter, both parties cite and argue for or against the I.S.D. I decision in their briefs. Nowhere, however, is collateral estoppel affirmatively pleaded or otherwise relied upon by the Defendants. Absent any clearer indication that the issue has been effectively raised, I must conclude that the Defendants have waived their right to assert such defense."). Bottom line: "the ordinary course of business defense" is an affirmative defense that must be raised early on in a proceeding. Here, it was first raised in the Defendant's response to the motion for summary judgment. Discovery has closed. The Trustee would be unduly prejudiced if the Defendant were allowed to present evidence regarding this defense. Therefore, the Defendant has waived her right to assert this defense at this late stage of the proceedings.

Furthermore, even if the defense had not been waived, under Minn. Stat. § 513.48(g)(1), the Defendant bears the burden of proving the applicability of the "ordinary course of business" defense contemplated by Minn. Stat. § 513.48(f)(2). In this regard, it is analogous to the bankruptcy ordinary course of business defense found at 11 U.S.C. § 547(c).

> Airline Software, as the transferee of the Preference Payments, has the burden of establishing its ordinary course and subsequent new value defenses by a preponderance of the evidence 11 U.S.C. § 547(g); Official Plan Comm. V. GE Capital Corp. (In re Omniplex Communications Group), 297 B.R. 573, 576 (Bankr. E.D. Mo. 2003). Thus, because it bore the burden of proof on its affirmative defenses, Airline Software also had the burden of establishing a sufficient evidentiary record to support its

7

affirmative defenses.  Leonard v. First Commercial Mortgage Co. (In re Circuit Alliance, Inc.), 228 B.R. 225, 235 n. 17 (Bankr. D. Minn. 1998).

In re Accessair, Inc., 314 B.R. 386, 392 (B.A.P. 8th Cir. 2004), *aff'd sub nom.* In re Access Air, Inc., 163 App'x 445 (8th Cir. 2006).

Lindback has failed to meet her burden of establishing the defense.  The Defendant, in her affidavit in response to the Trustee's motion, recites that she has made similar prior loans to her daughter, and that her daughter always repaid them over time.  Yet, Lindback offered no documentation to show the existence of these "prior loans."  She also refers to other similar loans made to her other children.  Those are irrelevant here.  The defense is only available as to the relationship between **this Defendant and this Debtor.**  Here, the undisputed facts show that the Debtor had made regular monthly payments between March 2012 and February 2013.  There were no further payments on the debt until May 27, 2014, when the Debtor liquidated certain stock interests to come up with the $41,356.24 transfers that the Trustee seeks to avoid.  Thus, the record establishes that Lindback has failed to carry her burden of establishing the "ordinary course of business" defense.

**B.    Reasonable Cause to Believe that the Debtor was Insolvent**

The final element the Trustee has to prove is that the Defendant had reasonable cause to believe that her daughter was insolvent at the time of the prepetition transfer.  As the Trustee aptly points out in his briefs in support of the motion for summary judgment, "[t]he true inquiry in this matter is whether a reasonable person, acting prudently, diligently, and in view of all of the facts and circumstances known to her, had reasonable cause to believe that the Debtor was insolvent."  Daniels v. Palmer, 35 Minn. 347, 351 (1886).

A review of the deposition testimony of both Lindbeck and her daughter reveals that this

standard has been met.  After having made regular payments on the loan her mother made to her, the Debtor testified that no payments had been made since February 2013.

> Q: (Mr. Swanson)
> This is for over a year that you weren't making any payments to her, correct?
> A: (Ms. White)
> That's correct.
> Q: Did you ever tell her that you just couldn't make the payments to her?
> A: Yes.  She was aware of that.  Again, we spoke five times a week. She was aware what I was trying to do with the money or what I was struggling to pay or build or whatever at that time.

ECF No. 13, Declaration of Matthew D. Swanson, Ex. 1 p. 35, lines 2-10.

When the Debtor's loan became due, she testified that she was unable to pay off the amount; instead, the Debtor liquidated all of her remaining stock assets to come up with the amount of $41,356.24.

> Q: Why weren't you paying her back the full amount?
> A: That's all I had.
> Q: So these stocks, these checks represent all, everything you had?
> A: That was the end of it.
> Q: Is that what you told your mother when you gave her these checks?
> A: She knew that, yes.

Id., Ex. 1 p. 37, lines 2-9.

Cast in the light of the Debtor's testimony, her mother, in her deposition testimony, testified as follows:

> Q: Is it your understanding that Ms. White was only able to pay you $41,356.24 is because she didn't have anything else to pay you?
> A: At that time, no.
> Q: What do you mean by at that time?
> A: Well, the project was completed, but it wasn't making money.  But, it looked like going forward that it will make money.  It was a horse boarding facility.
> Q: You thought maybe the future profits of that could pay your loan off?
> A: Yes.
> Q: But at that time is it safe to say your understanding was she didn't have

9

        any assets to pay you off any monies that she could use to pay down your Loan?
A:    No.
Q:    So your expectation of payment was from future earnings?
A:    Yes.

Id., Ex. 4 p. 19, lines 20-25, p. 20, lines 1-14.

Based on the undisputed facts, and the deposition testimony of both Lindback and her daughter, Lindback had reasonable cause to believe that the transfers to her on May 27, 2014 were made when her daughter was insolvent.

## CONCLUSION

The Trustee has met his burden of coming forward with sufficient facts to establish the absence of a genuine issue of material fact. The burden having thus shifted to the Defendant to establish specific and genuine issues of material fact warranting a trial; she has not done so, thereby entitling the Trustee to summary judgment in his favor. Therefore, the Court makes the following:

## FINDINGS OF FACT

1. This bankruptcy case was commenced by the filing of a Chapter 7 petition on June 15, 2015.

2. The Defendant is an individual residing in the state of Minnesota.

3. The Defendant, Rita Lindback, is the mother of the Debtor, Karen White.

4. The Plaintiff is the Trustee in the bankruptcy case of Karen White, assigned bankruptcy case no. 15-42150.

5. In 2011, the Debtor commenced a project on her property which led to her incurring substantial debts from 2012 through 2014, and eventually led to the filing of her bankruptcy

petition on June 15, 2015.

6. From February 2012 through March 2013, the Defendant lent monies totaling $71,500.00 to the Debtor.

7. The Defendant lent the Debtor monies without reviewing any financial records of the Debtor, and not knowing whether or not the Debtor had the ability to repay the loans.

8. The agreement between the Defendant and Debtor was that the Debtor would make monthly payments to the Defendant, and if necessary, liquidate stock to repay the loan.

9. The Debtor made monthly payments on the loans to the Defendant from March 2012 through January of 2013. From February 2013 through May 2014, the Debtor did not make any monthly payments on her debt to the Defendant.

10. During the time the Debtor was not making payments on the Defendant's loan, the Defendant was aware of the Debtor's precarious financial condition and had reasonable cause to know that the Debtor was insolvent.

11. On May 27, 2014 the Debtor liquidated certain stock interests and transferred payments totaling $41,356.24 to the Defendant as partial payment of the debt owed to the Defendant.

12. As the Debtor was unable to pay the full amount of the loan to the Defendant, the Debtor and the Defendant executed a promissory note after the prepetition transfers, providing for an extended payment deadline.

13. At the time of the prepetition transfers, other creditors held liquidated and matured claims against the Debtor and at least one of those claims remained unpaid as of the filing of the Debtor's petition.

14. At the time of the prepetition transfers, the Debtor was statutorily insolvent under Minn. Stat. § 513.42, as her assets exceeded her liabilities, and she was not paying her debts as they became due.

15.  On June 15, 2015, the Debtor filed a voluntary Chapter 7 bankruptcy petition, approximately one year and two weeks after the prepetition transfers to the Defendant.

## CONCLUSIONS OF LAW

1.  Avoidance of the prepetition transfers totaling $41,356.24 is appropriate under Minn. Stat. § 513.45(b), made applicable by 11 U.S.C. § 544.

2.  The bankruptcy estate is entitled to recover the avoided transfer through 11 U.S.C. § 550.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.  The Plaintiff's motion for summary judgment is **GRANTED.**

2.  The prepetition transfer of $41,356.24 to the Defendant is avoided as a fraudulent transfer under Minn. Stat. § 513.45(b); made applicable by 11 U.S.C. § 544.

3.  Under Minn. Stat. § 513.45(b), the Plaintiff is entitled to judgment in the amount of $41,356.24 against the Defendant, Rita Lindback.

4.  The bankruptcy estate is entitled to recover the avoided transfer under 11 U.S.C. § 550.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *09/09/2016*
Lori Vosejpka, Clerk, by MJS

*/e/ Michael E. Ridgway*
Michael E. Ridgway
United States Bankruptcy Judge